16092

ANDERSON *ET AL.* v. PAGE *ET AL.*

(48 S. E. (2d) 500)

*Messrs. Johnson, Johnson & Foster,* of Spartanburg, for Appellant,

*Messrs. Daniel & Russell* and *Osborne, Butler & Moore,* all of Spartanburg, for Respondents.

June 14, 1948.

FISHBURNE, J.: Alfred E. Moore, late of Wellford, South Carolina, departed this life on May 16, 1940, leaving a will in which he named the plaintiffs as executors and trustees. After concluding the administration of the estate, they were discharged by the Probate Court and thereafter brought this action as trustees seeking, among other things, a construction of certain portions of the will with special reference to a bequest made therein to the appellant, Mary Ada Dorrill.

The testator, for many years prior to his death, was extensively engaged in various lines of business, which included the operation of three mercantile stores. These stores were owned by the Moore-Howe Company, a corporation, all of the stock of which belonged to the testator. Under the provisions of his will he authorized and empowered his trustees to continue this mercantile business for such time after his decease as they should determine most advantageous to his estate, but in no event for a longer period than five years. In accordance with this direction, the respondents continued to operate the stores to the great benefit of the estate for

the full period of five years. The issue now before the court involves the proper distribution of the assets of this business under Item Ten of the will.

The appellant, Mary Ada Dorrill, was the trusted secretary of the testator continuously for about twenty-five years prior to his death. The bequest to her is found in Item Ten of the will, which reads as follows : "I give and bequeath unto my trustees hereinafter named my entire stock in Moore-Howe Company to be held in trust nevertheless for the uses and purposes of the trusts set up and created in the residuary clause of this my will which is hereinafter numbered 'Twelfth', with the request that they continue the said business for a period of five years after my death, if in their discretion they deem it for the best interest of my estate, * * * and then after such period of time to liquidate the said corporation and one-half of the net proceeds derived from such liquidation shall fall into and become part of my residuary estate, the remaining one-half of the net proceeds derived from such liquidation I. give and bequeath unto my faithful secretary, Mary Ada Dorrill, provided that she shall then be alive, which gift is an acknowledgment of her long and faithful service, however, if she should then be dead then the entire proceeds of such liquidation shall fall into and become a part of my residuary estate."

The residuary clause, which is numbered Twelfth in the will, devised and bequeathed the greater part of the estate to the plaintiffs in trust for a period of five years following the testator's death, with directions to manage the same and to pay one-half of the income therefrom to his niece , Martha Moore Page, and one-fourth each to his nieces, Mary Moore Perkins and Lucy Moore McIntosh, with contingent provisions that do not affect the disposition of the matters now in issue.

The cause was heard in the lower court upon the pleadings, the quarterly audits of the estate, and its administra-

tion; such quarterly statements covering the period from shortly before the testator's death until the liquidation of the Moore-Howe Company five years thereafter.

On the part of the appellant it is contended that Item Ten of the will should be construed so as to give her one-half of the net proceeds of the entire liquidation of the business which included all of its assets, physical, cash and accounts receivable, as well as any profits which were earned following the death of the testator. The court held, in accordance with the claim of the respondents, that under Item Ten the appellant was entitled upon liquidation to only a one-half share in the physical assets, that is, merchandise, furniture, fixtures and trucks, and excluded any interest whatever in cash and accounts receivable. (We will later deal with the question of profits, as to which she was also barred.)

Can a gift of "one-half of the net proceeds" of the liquidation of a mercantile corporation be limited to mean only a share in the physical assets and exclude all interest in the cash on hand and accounts receivable? This is the first question for decision and we think it must be answered in the negative.

As shown by a statement reflecting the value of the assets of the Moore-Howe Company on March 31, 1940, shortly before the death of the testator, the net value of this mercantile company was approximately $25,000.00. At that time the assets consisted of: cash, $7,568.04; merchandise, $11,964.09; accounts receivable, $3,264.19; furniture, fixtures and trucks, $1,799.28. When the liquidation of the company took place, five years after the death of the testator, the merchandise, fixtures and trucks were inventoried as being worth only $8,372.09, the accounts receivable were reduced to $655.10, and the furniture, fixtures and trucks had gone down to $701.57. But the cash on hand by reason of the successful conduct of the business had increased to $43,910.10. The appellant, however, in accordance with the decree of the trial court, was allowed no part of the cash or

the accounts receivable. It was held that she could only receive, under the terms of the will, a one-half share of the physical assets named above, which had deteriorated in value several thousand dollars since the death of the testator five years before.

We can find no reasonable basis in the will for a construction which would limit the appellant simply to a share in the "physical assets". These words do not appear in the will. The assets of the corporation, at the time of the testator's death, did not consist only of merchandise, furniture, fixtures and trucks, but also included and comprised cash and accounts receivable. All of these items were assets of the corporation and are so listed in every quarterly audit of the Moore-Howe Company from March 31, 1940, to January 1, 1945. In every instance they are classified as assets and we find nothing in the will directly or by implication which would confine appellant to share only in the stock on the shelves and the fixtures and trucks. The merchandise, of course, under the continued operation of the business, fluctuated in value with the buying policy of the trustees, and the fixtures and trucks depreciated with daily use.

It can hardly be supposed that the testator intended that the continued operation of the mercantile business should deplete or completely absorb the bequest given to his secretary, the appellant. During the five years the stores were operated the value of the merchandise decreased from $11,964.09 to $8,372.09, a diminution of about $3,600.00. And furniture, fixtures and trucks deteriorated in value from $1,700.00 to $701.57. By this process the appellant's interest in the physical assets alone was reduced over $2,000.00.

It is clear that if the trustees had not operated the business at all, appellant would have received more at the beginning than she has received at the end of a five-year profitable operation, so far as earnings are concerned. If the lower court is correct in principle, then in application there would be no limit to the diminishing of the share of appellant.

Because every dollar of reduction in the value of the merchandise and fixtures would increase the cash to that extent, in which the court held that only the respondents could participate.

In our opinion, it is manifest that the testator intended appellant to share in all the assets of the corporation, including cash on hand and accounts receivable.

Error is assigned because the court excluded appellant from any interest in the corporate profits or earnings from the date of testator's death to the date of the liquidation of the corporation five years later.

It was held by the court that all net earnings, after deducting taxes, operating expenses and proper depreciation allowances, are income of the Alfred E. Moore estate, properly distributable to those entitled under the provisions of the residuary clause—Item Twelfth of the will. And further, that the operation of the Moore-Howe Company, "notwithstanding it has been the past custom to not withdraw earnings while Mr. Moore was alive, is not to be for the purpose of increasing the assets of that corporation and making a division of the capital, surplus and earnings as of the term of the trust period."

In making the foregoing holding the trial court had reference to the opening lines of paragraph Ten which contain the appellant's bequest. This paragraph begins with this language: "I give and bequeath unto my Trustees hereinafter named my entire stock in Moore-Howe Company to be held in trust nevertheless for the uses and purposes for the trusts set up and created in the residuary clause of this My Will which is hereafter numbered 'Twelfth' ".

Under the Twelfth paragraph of testator's will the bulk of his estate, as well as the income received therefrom, is left as heretofore stated to three of his nieces, subject to certain conditions with which we are not now concerned. The

lower court held that under the residuary clause and the quoted portion of paragraph Ten the income—earnings and profits—derived from the five-year operation of the mercantile stores, should inure solely to the benefit of the three nieces and become merged with the income which they received from the bulk of the estate devised to them by the testator.

It cannot fairly be inferred that the testator intended to exclude his beneficiary, the appellant, from a one-half share in whatever profits were earned by the continued operation of the Moore-Howe Company. This intention of the testator is clearly shown by the fact that he refers in paragraph Ten to the gift of the residuary legatees, specifically, as "one-half of the net proceeds derived from such liquidation", and then goes on to say that such net proceeds "shall fall into and become part of my residuary estate". After disposing of this one-half of the net proceeds for the benefit of the residuary legatees, the testator then definitely provides: "The remaining one-half of the net proceeds derived from such liquidation I give and bequeath unto my faithful secretary, Mary Ada Dorrill, provided that she shall then be alive, which gift is in acknowledgment of her long and faithful service, however, if she should then be dead *then the entire proceeds of such liquidation shall fall into and become a part of my residuary estate."* (Emphasis added.)

From this language the conclusion is inescapable that it was the intention of the testator, if Mrs. Dorrill was alive five years after his death, that she would be entitled to one-half of the net proceeds of the Moore-Howe Company on its final liquidation. However, had appellant not survived, then the further provision that it would fall into the residuary clause and be governed thereby, covers the testator's reference to the residuary clause in the beginning of paragraph Ten.

The fact is conceded that the testator had never withdrawn any of the earnings and profits from this mercantile corpora-

tion during his lifetime. They had simply accumulated as surplus over the years. It, therefore, seems most reasonable to conclude that he intended that there should be a further accumulation of earnings and that these profits should augment and increase the gift to his secretary, rather than that the accumulation should actually react to her financial injury as we have previously shown.

We refer again to the language of the bequest stated and repeated in paragraph Ten: "One-half of the net proceeds derived from such liquidation." "Liquidation" in its general sense means the act or operation of winding up the affairs of a firm or company, by getting in assets, settling with debtors and creditors, and appropriating the amount of profit or loss. 54 C. J. S., Liquidate-Liquidation, page 565. *Lafayette Trust Co. v. Beggs,* 213 N. Y. 280, 107 N. E. 644, 645. There can be little doubt that the meaning of the word "liquidate" was well understood by the testator, an experienced business man.

At the end of the five-year period the trustees terminated the business, liquidated the corporation by direction of the will, and that liquidation resulted in a cash fund of approximately $54,000.00. According to the will (paragraph Ten), "One-half of the net proceeds derived from such liquidation" was given to the appellant, as we interpret it; but under the judgment of the lower court she receives less than $6,000.00, (being only one-half of the cash value of the physical assets, merchandise, fixtures and trucks) and the remainder of approximately $48,000.00 of the net proceeds derived from the liquidation is awarded to the residuary legatees.

From a construction of paragraphs Ten and Twelve of the will, we conclude that it could never have been intended by the testator that the appellant should be barred from sharing in the profits derived from the five-year operation of the Moore-Howe Company. The wording of the bequest, it seems to us, can carry no other logical construc-

tion than that she was to share in all of the assets of this corporation, including profits. And we hold that she is entitled to one-half of the net proceeds of the liquidation of this mercantile business, which we construe to mean, its assets, physical or otherwise, as well as the profits which were earned during its five-year operation. It follows that the decree of the lower court must be reversed.

Judgment reversed.

BAKER, C.J., and STUKES, TAYLOR and OXNER, JJ., concur.